Michael BAISDEN, Plaintiff,

v.

I'M READY PRODUCTIONS, INC., Image Entertainment, Inc., and A.L.W. Entertainment, Inc., Defendants.

Civil Action No. H–08–0451.

United States District Court,
S.D. Texas,
Houston Division.

June 10, 2011.

972

Aubrey "Nick" Pittman, The Pittman Law Firm, P.C., Daryl K. Washington, Law Offices of Daryl K. Washington, P.C., Dallas, TX, for Plaintiff.

David H. Harper, Jason P. Bloom, Haynes & Boone LLP, Dallas, TX, Kirk L. Worley, Kent Rutter, Christina Crozier, Haynes and Boone, LLP, Houston, TX, for Defendants IRP, ALW, Guidry, and Johnson.

Patricia Hair, Phelps Dunbar LLP, Houston, Texas, Mary Ellen Roy Phelps Dunbar, LLP New Orleans, LA, for Defendant Image Entertainment, Inc.

Vince Ravine, Lake Balboa, CA, pro hac vice.

### MEMORANDUM OPINION AND ORDER

SIM LAKE, District Judge.

On March 25, 2011, the court entered a Final Judgment (Docket Entry No. 290) adjudging that plaintiff, Michael Baisden, take nothing from defendants, I'm Ready Productions, Inc., Image Entertainment, Inc., A.L.W. Entertainment, Inc., Gary Guidry, and Je'Caryous Johnson, and that defendant, I'm Ready Productions, Inc., take nothing from plaintiff Michael Baisden on its counterclaims. The Final Judgment stated: "Those costs that are allowed under 28 U.S.C. § 1920 will be taxed against plaintiff, Michael Baisden." On April 8, 2011, defendants filed a Bill of Costs requesting the Clerk to tax costs in the amount of $66,391.03 against the plaintiff, Michael Baisden (Docket Entry No. 291). Plaintiff has filed Plaintiff's Objections to Defendants' Request for Bill of Costs (Docket Entry No. 292) in which he objects to defendants' Request for Bill of Costs, and defendants have filed a Reply (Docket Entry No. 293). For the reasons explained below—based on a review of the pleadings, the evidence, and the law—Baisden's Objections to Defendants' Request

for Bill of Costs will be sustained in part and overruled in part, and Baisden will be ordered to pay defendants' costs in the amount of $55,048.36.

## I. *Standard of Review*

■ Federal Rule of Civil Procedure 54(d)(1) states that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." *See Pacheco v. Mineta,* 448 F.3d 783, 793 (5th Cir.), *cert. denied,* 549 U.S. 888, 127 S.Ct. 299, 166 L.Ed.2d 154 (2006). Taxation of costs under Rule 54(d) is a matter within the court's discretion. *Id.* Nevertheless, Rule 54(d)(1) "contains a strong presumption that the prevailing party will be awarded costs," *id.,* and

> as a result of this cost-shifting presumption, the general discretion conferred by Rule 54(d)(1) has been circumscribed by the judicially-created condition that a court "may neither deny nor reduce a prevailing party's request for cost[s] without first articulating some good reason for doing so." *Id.* at 793–94 (quoting *Schwarz v. Folloder,* 767 F.2d 125, 131 (5th Cir.1985)).

*Id.* at 794. The court may decline to award certain costs, and may only tax as costs the expenses that are listed in 28 U.S.C. § 1920:

> (1) Fees of the clerk and marshal; (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) Fees and disbursements for printing and witnesses; (4) Fees for exemplification and costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) Docket fees under section 1923 of this title; (6) Compensation of court-appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpreta-

tion services under section 1828 of this title.

*See Crawford Fitting Co. v. J.T. Gibbons, Inc.,* 482 U.S. 437, 107 S.Ct. 2494, 2497–98, 96 L.Ed.2d 385 (1987). Allowable costs are limited to these categories, and expenses that are not authorized by statute or contract must be borne by the party incurring them. *Id. See also Coats v. Penrod Drilling Corp.,* 5 F.3d 877, 891 (5th Cir.1993), *cert. denied,* 510 U.S. 1195, 114 S.Ct. 1303, 127 L.Ed.2d 654 (1994) ("district court may decline to award costs listed in the statute but may not award costs omitted from the list"). If the party being taxed has not specifically objected to a cost, the presumption is that the costs being sought were necessarily incurred for use in the case and will be taxed. *See Embotelladora Agral Regiomontana, S.A. de C.V. v. Sharp Capital, Inc.,* 952 F.Supp. 415, 417 (N.D.Tex.1997) ("[I]n the absence of a specific objection, deposition costs will be taxed as having been necessarily obtained for use in the case."). However, once an objection has been raised, the party seeking costs bears the burden of verifying that the costs were necessarily incurred in the case rather than just spent in preparation and litigation of the case. *See Fogleman v. ARAMCO (Arabian American Oil Co.),* 920 F.2d 278, 286 (5th Cir.1991).

## II. *Analysis*

Baisden objects to defendants' Bill of Costs on grounds that defendants are not entitled to the amounts they seek under 28 U.S.C. § 1920.

### A. **Fees for Service of Summons and Subpoena**

■ Defendants' Bill of Costs seeks $2,220.50 as fees for service of subpoenas by a private process server.[1] Citing *Cy-*

---

1. *See* Bill of Costs, Docket Entry No. 291. *See also* Declaration of David Harper attached thereto at p. 2 ¶ 2 ("Defendants in-

*press–Fairbanks Independent School District v. Michael F.*, 118 F.3d 245, 257 (5th Cir.1997), *cert. denied*, 522 U.S. 1047, 118 S.Ct. 690, 139 L.Ed.2d 636 (1998), Baisden argues that these fees are not recoverable because "the courts in this circuit generally do not allow recovery of costs by a private process server."[2] Baisden explains that

> where the minority rule has considered taxing private process fees, the court only permitted taxing of costs for service of process so much as they do not exceed the cost of service by the Untied States Marshal ... The cost of the Marshal service is $55.00. Therefore, if the Court chooses to allow this fee, Plaintiff asks that such costs be limited to $55.00 each for the seven (7) individuals served.[3]

Citing *Alflex Corp. v. Underwriters Laboratories, Inc.*, 914 F.2d 175, 177–78 (9th Cir.1990), defendants argue that "a party may recover costs for service of subpoenas by a private process server."[4] Defendants explain "[n]ow that the Marshal is no longer involved as often in the serving of summonses and subpoenas, the cost of private process servers should be taxable under 28 U.S.C. § 1920(1)."[5] Defendants distinguish the Fifth Circuit case on which Baisden relies, *Cypress–Fairbanks*, 118 F.3d 245, by explaining that

> [i]n *Cypress–Fairbanks*, the court found that private process server costs were not necessary, because the party's attorney agreed to accept service on behalf of himself and his client, and did not object

to service of process by mail. Defendants argue that they are not seeking fees for service of process on a party, which can be waived, but for service of third-party subpoenas.[6]

Defendants also argue that

> Baisden improperly contends that Defendants' subpoena fees are limited to $55 per subpoena based on the Southern District of Texas' Marshal fees. Baisden cites no binding authority to establish that Defendants' fees are limited to those charged by the Marshal.[7]

■ Section 1920(1) allows recovery of "[f]ees of the clerk and marshal," but does not expressly allow recovery of private process server fees. In *Cypress–Fairbanks*, 118 F.3d at 257, the Fifth Circuit held that defendants properly objected to costs attributable to the school district's use of a private process server to serve both them and their attorney despite counsel's having agreed to accept service on their behalf and not having objected to use of service by mail because there was nothing exceptional about the parties or the nature of the case. In so holding the Fifth Circuit cited *Zdunek v. Washington Metropolitan Area Transit Authority*, 100 F.R.D. 689, 692 (D.D.C.1983), in which the court disallowed the prevailing party's request for private process server fees on grounds that "there was nothing exceptional about either the parties or the nature of th[e] case that required the use of paid process servers." *Cypress–Fairbanks*, 118 F.3d at 257. In this circuit, "absent exceptional circumstances, the

---

curred $2,220.50 in costs to serve subpoenas compelling witnesses to testify at depositions in this case. Attached at Tab 1 are true and correct copies of invoices reflecting these service of subpoena fees.").

**2.** Plaintiff's Objections to Defendants' Request for Bill of Costs, Docket Entry No. 292, p. 2.

**3.** *Id.*

**4.** Defendants' Reply in Support of Bill of Costs, Docket Entry No. 293, p. 2.

**5.** *Id.* (quoting *Alflex*, 914 F.2d at 178).

**6.** *Id.*

**7.** *Id.*

costs of a private process server are not recoverable under Section 1920." *Marmillion v. American International Insurance Co.*, 381 Fed.Appx. 421, 431 (5th Cir. 2010) (citing *Cypress–Fairbanks*, 118 F.3d at 257).

Moreover, although many courts have recognized that service today is largely accomplished by private process servers instead of United States Marshals, and for that reason have allowed prevailing parties to recover private process server fees, courts that have allowed recovery of such fees typically do so only to the extent that the costs incurred do not exceed the costs that would have been incurred had the United States Marshal effected service. *See Collins v. Gorman*, 96 F.3d 1057, 1060 (7th Cir.1996) ("[W]e think it best to resolve the ambiguity of § 1920 in favor of permitting the prevailing party to recover service costs that do not exceed the marshal's fees, no matter who actually effected service."); *United States Equal Employment Opportunity Commission v. W & O, Inc.*, 213 F.3d 600, 624 (11th Cir.2000) (rejecting Ninth Circuit's reasoning in *Alflex* as contrary to the Supreme Court's holding in *Crawford Fitting*, but finding persuasive the reasoning that § 1920(1) "refers to the fees 'of' the marshal but does not require payment 'to' the marshal" and, holding, instead, that "a district court does not abuse its discretion in taxing private process server fees that do not exceed the statutory fees authorized in § 1921").

Because § 1920 contains no provision for the cost of private process servers, and because defendants have not provided any evidence of exceptional circumstances that required the use of private process servers or any evidence of what the United States Marshals Service would have charged for the same service, the court concludes that the amount defendants seek for service of subpoenas by private process servers is not recoverable under 28 U.S.C. § 1920. Accordingly, plaintiff's objection to amounts incurred for service of subpoenas is sustained. *See Honestech, Inc. v. Sonic Solutions*, 725 F.Supp.2d 573, 585 (W.D.Tex.2010) ("[B]ecause there was nothing exceptional about the parties or the nature of this case, the Court finds the private process server fees are not properly taxable as costs.").

### B. Printed or Electronically Recorded Transcript

Defendants seek $41,776.00 for "[f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case." [8] Defendants assert that

> [t]hese costs consist of $816.90 in fees for hearing transcripts and $40,959.10 in court reporter and videographer fees for depositions taken in this case ... Moreover, most of the video depositions that Defendants ordered were played at trial. Specifically, portions of the video depositions of Arthur Jones, James Sessions, Terrell Hunt, Doree Reno, Pamela Exum, Michael Helfand, Yvonne Gilliam, and Barrett LaRoda were played by Defendants for impeachment or in lieu of calling a live witness at trial.[9]

Baisden objects to (1) the $7,283.94 in costs for the depositions of Albert Wash, Gary Guidry, Je'Caryous Johnson, Cynthia Bero, Karl Weisheit, and Kathryn Arnold, (2) the $12,635.00 in costs for video depositions or, alternatively, to the $18,052.23 in costs for duplicative stenographic transcripts, and (3) the total costs for the depositions of Baisden ($5,384.10), Pamela Exum ($5,122.60), and Scott Barnes ($7,769.40).

---

8. Bill of Costs, Docket Entry No. 291.

9. Declaration of David H. Harper, Exhibit A to Bill of Costs, Docket Entry No. 291, p. 2 ¶ 3.

### 1. Costs for Depositions of Wash, Guidry, Johnson, Bero, Weisheit, and Arnold

■ Baisden argues that the $7,283.94 in costs for the depositions of Wash, Guidry, Johnson, Bero, Weisheit, and Arnold are excessive because these individuals were either parties or experts in defendants' control who could reasonably have been expected to testify live at trial. Nevertheless, Baisden either cited one or more of these depositions in support of a pretrial motion, or designated excerpts from each of these depositions for use at trial.[10] Accordingly, Baisden's objections to the cost of these depositions are overruled because the defendants had a reasonable expectation that each of these depositions would be used for trial preparation.

### 2. Costs for Video and Stenographic Versions of Depositions

■ Citing *Gaddis v. United States*, 381 F.3d 444, 476 (5th Cir.2004) (en banc), and *Mota v. University of Texas Houston Health Science Center*, 261 F.3d 512, 529–30 (5th Cir.2001), Baisden argues that "since § 1920 makes no provision for videotapes of depositions, recovery of such without prior authorization from the court is generally not allowed."[11] Baisden's argument fails to recognize that since the Fifth Circuit's decisions in *Gaddis* and *Mota*, § 1920(2) has been amended to

state that a court may tax as costs "fees for printed or electronically recorded transcripts necessarily obtained for use in the case." 28 U.S.C. § 1920(2). *See also S & D Trading Academy, LLC v. AAFIS, Inc.*, 336 Fed.Appx. 443, 450–451 (5th Cir.2009), *cert. denied*, —— U.S. ——, 130 S.Ct. 1054, 175 L.Ed.2d 883 (2010) (observing that the Judicial Administration and Technical Amendments Act of 2008 amended § 1920(2) to permit a judge to tax as costs fees for "electronically recorded transcripts"). Accordingly, the cost for videotaped depositions is now recoverable under § 1920(2).

Baisden also objects to defendants' request for the costs of both the video and stenographic versions of eleven depositions (Gwenevere Richardson, Arthur Jones, Adrienne McWilliams, Ralph Farquhar, Pamela Exum, Doree Reno, Michael Helfand, Michael Baisden, Yvonne Gilliam, James Session, and Scott Barnes). Baisden argues that "even if Defendants could prove these depositions were obtained for use in this case, the stenographic version of the transcript could have satisfied such use."[12] Defendants respond that the written transcripts of these depositions were needed to submit page/line deposition designations required by the court and to refer the court and opposing counsel to passages in the transcripts when impeaching witnesses at trial and playing designations of the video-taped versions at trial.[13] Quoting *Nilesh Enter-*

10. *See* Appendix to Plaintiff's Sur–Reply in Opposition to Defendants' Motion for Summary Judgment, Docket Entry No. 104, (including excerpts from the depositions of Guidry and Wash); Plaintiff's Response to Defendants' Objections to and Motion to Strike Plaintiff's Supplemental Summary Judgment Evidence, Docket Entry No. 115 (Exhibit 2, Excerpts from Guidry Deposition and Exhibit 3, Excerpts from Johnson Deposition); Plaintiff's First Amended Motion to Exclude Testimony of Karl Weisheit, Docket Entry No. 178 (Exhibit A, Excerpts from Weisheit Deposition); Plaintiff's Motion to Exclude Testimony of Kathryn Arnold, Dock-

et Entry No. 195 (Arnold Deposition cited at pp. 2, 5–6, and 11); Defendants' Objections to Plaintiff's Pre–Trial Deposition Designations, Docket Entry No. 229, pp. 15–20 (objecting to plaintiff's pretrial designation of excerpts from Bero deposition).

11. Plaintiff's Objections to Defendants' Request for Bill of Costs, Docket Entry No. 292, p. 4.

12. *Id.* at 5.

13. Defendants' Reply in Support of Bill of Costs, Docket Entry No. 293, p. 4.

prises, Inc. v. Lawyers Title Insurance, Corp., 2010 WL 2671728 (W.D.Tex. July 1, 2010), defendants argue that they are " 'entitled to recover the costs for *both* deposition transcripts and video depositions.' " [14] Defendants argue that they obtained video depositions for those witnesses whose live attendance at trial was uncertain and for witnesses whose credibility was sharply disputed.[15] In *Nilesh* the prevailing party asked the court to award the cost of both the video and paper transcript of a deposition. The opposing party objected to the request for costs of the video deposition. Observing that videotape deposition costs and deposition transcripts are both recoverable costs, but that the requesting party still bears the burden of showing that the various versions of the deposition were reasonably obtained for use in the case, the court held that the costs of both versions were recoverable as taxable costs because the videotaped version was presented to the jury at trial. *Id.* at *5.

Section 1920(2) expressly authorizes taxation of costs of "[f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case." The Fifth Circuit has

> consistently held that a deposition need not be introduced into evidence at trial in order to be "necessarily obtained for use in the case." If, at the time it was taken, a deposition could reasonably be expected to be used for trial preparation, rather than merely for discovery, it may be included in the costs of the prevailing party. Similarly, a deposition copy obtained for use during trial or for trial preparation, rather than for the mere convenience of counsel, may be included in taxable costs.

*Fogleman,* 920 F.2d at 285. Determination of whether such copies are reasonably necessary is made by the trial court. *See Ramonas v. West Virginia University Hospitals–East, Inc.,* 2010 WL 3282667, at *8 (N.D.W.Va. Aug. 19, 2010) ("In order for a party to recover for *both* transcription and videotaping costs-the prevailing party must show that both the transcript and video were 'necessarily obtained for use in the case.' "); *Farnsworth v. Covidien, Inc.,* 2010 WL 2160900, at *2 (E.D.Mo. May 28, 2010) (costs for both videotaping and transcription of depositions awarded, "because at the time of the depositions, it was reasonable to believe that videotapes would be necessary at trial if any of the witnesses were unable to testify in person, or if a witness testified inconsistently with his or her deposition testimony. Additionally, it cannot be said that a videotape of a deposition is wholly duplicative of a transcript of the same deposition because the transcript only captures verbal communication, while the videotape captures both verbal and nonverbal communication.").

In addition to copyright infringement litigation generally being complex, the litigation between these parties has a long and tortuous history. Defendants were defending against Baisden's multiple claims for damages and were prosecuting counterclaims. Video depositions were taken for several, but not all the witnesses in this case. Defendants displayed portions of video depositions on several occasions during the trial. Baisden does not argue that when the video depositions were taken and the stenographic versions were produced defendants did not reasonably expect to use both the video and stenographic versions of the depositions during trial. Nor does Baisden dispute defendants' contention that the only depositions that were videotaped were the de-

---

14. *Id.*

15. *Id.*

positions of witnesses whose live attendance at trial was uncertain or witnesses whose credibility was sharply disputed. Based on the facts and circumstances of this case, the court concludes that the videotaped and stenographic versions of the depositions of Richardson, Jones, McWilliams, Farquhar, Exum, Reno, Helfand, Baisden, Gilliam, Session, and Barnes were necessarily obtained for use in this case, and that Baisden's objections to defendants' costs for these depositions are overruled. *See Merck Sharp & Dohme Pharmaceuticals, SRL v. Teva Pharmaceuticals USA, Inc.,* 2010 WL 1381413, *3–*4 (D.N.J. March 31, 2010) (costs allowed for both printed and electronically recorded transcripts in complex and high stakes patent infringement case); *B & B Hardware, Inc. v. Hargis Industries, Inc.,* 2010 WL 3655737, *1–*2 (E.D.Ark. Sept. 9, 2010) (same in complex and high stakes trademark infringement case).

### 3. *Total Costs for the Baisden, Exum, and Barnes Depositions*

Finally, Baisden argues that "the total costs of the depositions of Michael Baisden (total of $5,384.10), Pamela Exum ($5,122.60) and Scott Barnes ($7,769.40) are excessive and should be disallowed since Defendants cannot show that the duplication and recording costs for these depositions are not excessive."[16] Defendants argue that

the total deposition costs for Baisden, Pamela Exum ("Exum"), and Scott Barnes ("Barnes") reflect reasonable market rates. Baisden and Exum's depositions both comprised two volumes, and Barnes' deposition was required to be expedited, because Barnes was not produced for his deposition until March 16, 2010, scarcely two weeks before the deadline to file *Daubert* motions.[17]

Because Baisden has not explained why the costs of these depositions is excessive and does not dispute defendants' contention that the costs reflect reasonable market rates, Baisden's objections to defendants' costs for the Baisden, Exum, and Barnes depositions are overruled.

### C. Witness Fees

Defendants seek $6,871.04 for witnesses. This amount consists of $894.93 for Weisheit, $3,630.61 for Arnold, and $2,345.50 for Bero.[18] Citing 28 U.S.C. § 1821(a)(1), Baisden argues that all of Arnold's "alleged travel costs ($2,074.80) should be disallowed"[19] because "Arnold has not provided any receipts of the actual cost of her travel."[20] Citing 28 U.S.C. § 1821(d)(2), Baisden asserts that "[t]he maximum per diem rate in 2011 (the year of the trial) for Houston, Texas is $180.00 with a per diem lodging rate of $109.00 per night ... [T]he maximum the Court should award ... is $180.00 for Kathryn Arnold for a one night stay in Houston."[21] Baisden also argues that "none of Defendants' witnesses has presented any evidence that the flights they took were provided by a common carrier at 'the most economical rate reasonably available ... As such, this Court

---

16. Plaintiff's Objections to Defendants' Request for Bill of Costs, Docket Entry No. 292, p. 5.

17. Defendants' Reply in Support of Bill of Costs, Docket Entry No. 293, p. 4.

18. Itemized Schedule in Support of Bill of Costs attached to Bill of Costs, Docket Entry No. 291, pp. 4–5.

19. Plaintiff's Objections to Defendants' Request for Bill of Costs, Docket Entry No. 292, p. 6.

20. *Id.*

21. *Id.*

should not award any of the $3,825.80 in flight expenses for these party witnesses." [22]   Citing 28 U.S.C. § 1821(d)(1), Baisden argues that "since Karl Weisheit resides in Dallas (a 45 minute plane ride from Houston), and his testimony was limited to less than 45 minutes, there was no need for him to have an overnight stay in Houston. Therefore, his lodging and subsistence should be disallowed." [23]

Defendants respond that their witness costs should not be denied because

(a) they have submitted invoices from Kathryn Arnold reflecting her travel costs, which constitute "other evidence of the actual cost" of travel provided for by 28 U.S.C. § 1821;

(b) they are not required to submit evidence of the reasonableness of their witnesses' airline ticket fees, and in any case the airline ticket fees were reasonable because Weisheit, Arnold, and Bero were required to purchase airline tickets shortly before their dates of travel due to the uncertainty of the trail schedule and the days on which each witness would testify;

(c) the subsistence costs for each witness were reasonable because "overnight stays[ ] were necessary to allow the witnesses to (1) travel to and from their respective destinations, (2) prepare to testify, (3) observe Baisden's expert testify, in the case of Weisheit and Arnold, and (4) testify." [24]

Defendants explain that

Weisheit cannot reasonably have been expected to travel to Houston, Texas, for trial; to testify; and to return to Dallas,

Texas in a single day, as Baisden contends.  Moreover, Arnold and Bero's travel from California to Texas easily consumed a full day, considering the time spent travelling to and form airports, flight time, and the change in time zones. [25]

Finally, defendants argue that their "subsistence costs should not be limited to the per diem rates for which Baisden argues [because] he cites no authority indicating that these limits apply to a party seeking costs under Rule 54." [26]

Necessary expenses for witnesses who appear at deposition and/or trial, including fees and travel expenses, are recoverable as taxable costs subject to the provisions of 28 U.S.C. § 1821.  *See Holmes v. Cessna Aircraft Co.,* 11 F.3d 63, 64 (5th Cir. 1994) (per curiam) (stating that 28 U.S.C. § 1920(3) "must be read in conjunction with section 1821 which, in effect, defines the taxable fees and disbursements associated with witnesses.  Section 1821 includes expenses associated with a witness' travel and lodging.").  *See also Arlington Central School District Board of Education v. Murphy,* 548 U.S. 291, 126 S.Ct. 2455, 2460, 165 L.Ed.2d 526 (2006) ("This list of otherwise recoverable costs is obviously the list set out in 28 U.S.C. § 1920, the general statute governing the taxation of costs in federal court, and the recovery of witness fees under § 1920 is strictly limited by § 1821, which authorizes travel reimbursement and a $40 per diem."); *Crawford Fitting,* 107 S.Ct. at 2499 ("We hold that absent explicit statutory or contractual authorization for the taxation of the expenses of a litigant's witness as costs, federal courts are bound by the limitations

22.  *Id.*

23.  *Id.*

24.  Defendants' Reply in Support of Bill of Costs, Docket Entry No. 293, p. 5.

25.  *Id.*

26.  *Id.*

set out in 28 U.S.C. § 1821 and § 1920.").
Section 1821 provides:

(c)(1) A witness who travels by common carrier shall be paid for the actual expenses of travel on the basis of the means of transportation reasonably utilized and the distance necessarily traveled to and from such witness's residence by the shortest practical route in going to and returning from the place of attendance. Such a witness shall utilize a common carrier at the most economical rate reasonably available. A receipt or other evidence of actual cost shall be furnished.

(2) A travel allowance equal to the mileage allowance which the Administrator of General Services has prescribed, pursuant to section 5704 of title 5, for official travel of employees of the Federal Government shall be paid to each witness who travels by privately owned vehicle. Computation of mileage under this paragraph shall be made on the basis of a uniformed table of distances adopted by the Administrator of General Services.

. . .

(d)(1) A subsistence allowance shall be paid to a witness when an overnight stay is required at the place of attendance because such place is so far removed from the residence of such witness as to prohibit return thereto from day to day.

(2) A subsistence allowance for a witness shall be paid in an amount not to exceed the maximum per diem allowance prescribed by the Administrator of General Services, pursuant to section 5702(a) of title 5, for official travel in the area of attendance by employees of the Federal Government.

28 U.S.C. § 1821(c)(1). In *United Teacher Associates Insurance Co. v. Union Labor Life Insurance Co.*, 414 F.3d 558 (5th Cir. 2005), the Fifth Circuit held that the district court abused its discretion when it awarded subsistence costs in excess of the per diem amount authorized by 28 U.S.C. § 1821(d)(2). *Id.* at 575 (citing *Holmes*, 11 F.3d at 64 (vacating an award of costs because the court awarded more than the $40 per day permitted under 28 U.S.C. § 1821(b))). The Fifth Circuit expressly noted that "28 U.S.C. § 1821(d)(2) does not . . . permit the award of 'actual costs,' but limits such awards to the per diem rate." *Id.* at n. 12.

### 1. *Karl Weisheit*

Defendants seek $894.93 for Karl Weisheit's appearance at trial on February 25, 2011. This amount consists of: (1) $325.90 airfare from Dallas, Texas, (2) $462.47 hotel, (3) $60.00 taxi fares, (4) $7.56 travel meal, and (5) $39.00 parking in Dallas.[27] The supporting documentation attached to defendants' Bill of Costs includes a Southwest Airlines receipt showing that Weisheit traveled from Dallas to Houston via the common carrier Southwest Airlines for a fare of $325.90. Although Baisden objects that defendants have failed to show that this fare was the most economical rate reasonably available, the receipt shows that the fare was booked the day of travel and under these circumstances the court is persuaded that the fare was reasonable.

Weisheit arrived in Houston the evening of February 23, 2011, departed Houston the evening of February 25, and spent two nights in a hotel. The supporting documentation attached to defendants' Bill of Costs includes a receipt from Weisheit's hotel showing that the room rate he paid was $175.00 per night and that the local

---

**27.** Itemized Schedule in Support of Bill of Costs attached to Bill of Costs, Docket Entry No. 291, p. 4.

occupancy taxes totaled $29.75 per night for a total cost of $204.75 per night. Weisheit's hotel receipt also shows that he spent the following amounts at a café: $6.00 on February 23, $29.36 on February 24, and $17.61 on February 25. Weisheit's hotel receipt also shows that he spent $17.31 for a movie, but defendants have omitted this amount from the costs they are seeking. Baisden objects to the amounts that defendants are seeking for Weisheit's trial appearance on two bases: (1) since Weisheit resides in Dallas, and his testimony was limited to less than 45 minutes, there was no need for him to have an overnight stay in Houston; and (2) the amounts sought exceed the maximum per diem rate in 2011 for Houston, Texas, of $180.00 per diem with a maximum per diem lodging rate of $109.00 per night, and a maximum per diem rate for meals and incidental expenses of $71.00 per day.

Defendants respond that Weisheit's overnight stays were necessitated by his need to prepare to testify, observe Baisden's expert testify, and testify. Because Houston, Texas, where the trial took place "is so far removed from [Weisheit's] residence [in Dallas, Texas,] as to prohibit return thereto from day to day," 28 U.S.C. § 1821(d)(1), and because Weisheit reasonably needed a day to prepare to testify and to observe Baisden's expert testify before he testified, the court concludes that Weisheit's appearance at the trial reasonably required two overnight stays in a Houston hotel. However, since the costs that defendants seek for Weisheit's overnight stays exceed the maximum per diem rates for lodging and for meals and incidental expenses allowed for Houston, Texas, during February of 2011, the court concludes that the defendants are not entitled to recover the entire amount sought for Weisheit's subsistence but, instead, may only recover $109.00 per night for lodging and $53.25 for meals and incidental expenses for his first and last days of travel (February 23 and 25), and $71 for meals and incidental expenses for February 24. *See United Teacher Associates,* 414 F.3d at 575 & n. 12 ("28 U.S.C. § 1821(d)(2) does not, however, permit the award of 'actual costs,' but limits such awards to the per diem rate."). The court concludes that the total taxable cost for Weisheit's trial appearance is $820.40 consisting of (1) $325.90 for airfare, (2) $395.50 for subsistence,[28] (3) $60.00 taxi fares, and (4) $39.00 for parking in Dallas.

### 2. *Kathryn Arnold*

Defendants seek $1,225.92 for Arnold's appearance at a deposition in April of 2010 and $2,404.69 for Arnold's appearance at trial, for a total cost of $3,630.61 for Arnold's travel expenses. The supporting documentation attached to defendants' Bill of Costs consists solely of unverified invoices that Arnold provided to defendants' attorneys. Baisden objects to these amounts on two bases: (1) Arnold has not provided any receipts showing the actual cost of her travel; and (2) the amounts sought for Arnold's overnight stays in Houston exceed the maximum per diem rates allowed by 28 U.S.C. § 1821(d)(2).

---

**28.** This figure is calculated as follows: February 23—$109.00 for lodging and $53.25 for meals and incidental expenses; February 24—$109.00 for lodging and $71.00 for meals and incidental expenses; and February 25—$53.25 for meals and incidental expenses. *See* 41 C.F.R. § 301–11.6 (2009) (referring to the web site maintained by the General Services Administration at *http://www.gsa.gov/ perdiem* showing FY 2011 Per Diem Rates for Houston, Texas, as $109.00 per night for lodging (see *http://www.gsa.gov/portal/content/ 101518*), and $71.00 for meals and incidental expenses, and $53.25 for meals and incidental expenses on the first and last day of travel (see *http://www.gsa.gov/portal/content/100120*). Website last viewed on June 8, 2011.

### (a) Arnold's Deposition Appearance

■ Defendants seek $1,225.92 for Arnold's appearance at a deposition from April 25 to 28, 2010. This amount consists of: (1) $290.00 airfare and baggage from Los Angeles, California, to Dallas, Texas; (2) $840.22 hotel and meals; (3) $61.00 taxi fares; and (4) $34.70 meals.[29] The invoice attached to defendants' Bill of Costs that reflects costs being sought for Arnold's deposition appearance is dated April 29, 2010, and includes the following expenses:

| | |
|---|---|
| Hotel and meals | $840.22 |
| Taxi | 10.00 |
| Meal | 4.28 |
| Dinner | 23.00 |
| Taxi | 51.00 |
| Breakfast | 7.42 |
| Airline ticket change | 170.00 |
| Baggage charges $60.00 each way | 120.00 |

There are no dates for when these expenses were incurred, no explanation for why they were incurred, no underlying receipts or bills, and no evidence of why the airline ticket and/or the baggage fees were reasonable or even whether they were charged by a common carrier. Defendants explain that the amount sought for Arnold's appearance at the deposition consists of four days' subsistence, but offer no explanation for why these expenses were necessary and/or reasonable. Instead, without citing any authority, defendants argue that they are not required to submit evidence of the reasonableness of their witnesses' airline ticket fees, and that they should not be limited to the per diem rates for which Baisden argues.[30]

Citing *Holmes*, 11 F.3d at 64, defendants contend that Arnold's invoice is sufficient as "other evidence" allowed instead of actual receipts in support of the costs sought. In *Holmes* the prevailing party attached the affidavit of its trial counsel in satisfaction of the verification requirements. The trial counsel

> swore that he was familiar with the costs of defending the case, that the travel expenses claimed were actually incurred by [the prevailing party], and that they were necessary to [the prevailing party's] successful defense of the suit. He also incorporated by reference an itemized statement containing the specific amounts claimed as travel expenses.

*Id.* at 65. The Fifth Circuit stated that "[w]e believe that this affidavit presents sufficient evidence to meet the requirements of section 1821(c)(1)." *Id.* Here, defendants have similarly attached a sworn declaration of their trial counsel to the Bill of Costs that states the facts contained in the declaration are true and correct and within his personal knowledge, that the costs stated in the Bill of Costs are reasonable and were necessarily incurred by defendants in this matter for services that were actually performed.[31] *See United Teacher Associates*, 414 F.3d at 574 (district court did not abuse its discretion by awarding travel costs based on an invoice attached to Bill of Costs).

Baisden does not dispute that Arnold appeared in Dallas, Texas, for a deposition in April of 2010, or argue that the airline ticket charge and/or baggage fees and/or taxi fares sought were unreasonable or unnecessary. Accordingly, the court concludes that the trial counsel's declaration presents sufficient evidence to meet the verification requirements of section 1821(c)(1), and that the $290.00 sought for Arnold's air travel from Los Angeles, California, to Dallas, Texas, and the $61.00

---

**29.** Itemized Schedule in Support of Bill of Costs attached to Bill of Costs, Docket Entry No. 291, p. 5.

**30.** Defendants' Reply in Support of Bill of Costs, Docket Entry No. 293, p. 5.

**31.** Declaration of David H. Harper, Exhibit A to Bill of Costs, Docket Entry No. 291.

sought for Arnold's taxi fares were reasonable. However, since the costs that defendants seek for Arnold's overnight stays exceed the maximum per diem rates for lodging and for meals and incidental expenses allowed for Dallas, Texas, during April of 2010, the court concludes that the defendants are not entitled to recover the entire amount sought for Arnold's subsistence but, instead, may only recover $117.00 per night for lodging and $53.25 for meals and incidental expenses for her first and last days of travel (April 25 and 28), and $71 for meals and incidental expenses for April 26 and 27. *See United Teacher Associates,* 414 F.3d at 575 & n. 12 ("28 U.S.C. § 1821(d)(2) does not, however, permit the award of 'actual costs,' but limits such awards to the per diem rate."). The total taxable cost for Arnold's deposition appearance is $950.50 consisting of (1) $290.00 for airfare and baggage fees, (2) $599.50 for subsistence,[32] and (3) $61.00 for taxi fares.

### (b) Arnold's Trial Appearance

■ Defendants seek $2,404.69 for Arnold's trial appearance from February 23 to 25, 2011. This amount consists of: (1) $1,784.80 airfare from Los Angeles, California, to Houston, Texas; (2) $429.58 hotel and meals, (3) $115.50 taxi fares, and (4) $74.81 meals.[33] The invoice attached to defendants' Bill of Costs that reflects costs being sought for Arnold's trial appearance is dated March 7, 2011, and includes the following expenses:

| | |
|---|---:|
| Original Airline tix SEA–HOUSTON | $ 320.00 |
| 2nd Airline tix LAX–HOUSTON | 1,463.90 |
| Hotel and Hotel Meals Houston | 429.58 |
| Meals | 67.36 |
| Meals | 7.45 |
| Taxi Houston Airport to Hotel | 57.50 |
| Taxi Hotel to Houston Airport | 58.00 |

There are no dates for when these expenses were incurred, but defendants explain that the amount sought for Arnold's trial appearance consists of three days' subsistence.[34]

Baisden does not dispute that overnight stays were required for Arnold's trial appearance, but argues that the costs incurred for Arnold's travel and subsistence are not sufficiently substantiated. For the reasons stated in § II.C.2(a) above, the court concludes that the declaration provided by defendants' trial counsel is sufficient to substantiate the necessity and the reasonableness of the travel costs incurred for Arnold's appearance at trial. However, since the costs that defendants seek for Arnold's overnight stays exceed the maximum per diem rates for lodging and for meals and incidental expenses allowed for Houston, Texas, during February of 2011, the court concludes that the defendants are not entitled to recover the entire amount sought for Arnold's subsistence but, instead, may only recover $109.00 per night for lodging and $53.25 for meals and incidentals for her first and last day of travel (February 23 and 25), and $71 for meals and incidentals for February 24. Accordingly, the court concludes that the total taxable cost for Arnold's appearance

---

**32.** This figure is calculated as follows: April 25, 2010—$117.00 for lodging and $53.25 for meals and incidental expenses; April 26 and 27, 2010—$117.00 for lodging and $71.00 for meals and incidental expenses each day; and April 28, 2010—$53.25 for meals and incidental expenses. *See* 41 C.F.R. § 301–11.6 (2009) (referring to the web site maintained by the General Services Administration at *http://www.gsa.gov/perdiem* showing FY 2010 Per Diem Rates for Dallas, Texas, as $117.00 per night for lodging (see *http://www.gsa.gov/portal/content/101518*), and $71.00 for meals

and incidental expenses, and $53.25 for meals and incidental expenses on the first and last day of travel (see *http://www.gsa.gov/portal/content/100120*). Website last viewed on June 8, 2011.

**33.** Itemized Schedule in Support of Bill of Costs attached to Bill of Costs, Docket Entry No. 291, p. 5.

**34.** Defendants' Reply in Support of Bill of Costs, Docket Entry No. 293, pp. 4–5.

at trial is $2,295.80 consisting of (1) $1,784.80 for airfare, (2) $395.50 for subsistence,[35] (3) $115.50 taxi fares to and from the airport.

### 3. *Cindy Bero*

■ Defendants seek $2,345.50 for Bero's trial appearance from February 19 to 22, 2011. This amount consists of: (1) $1,425.10 airfare from Los Angeles, California, to Houston, Texas; (2) $651.06 hotel; (3) $108.00 shuttle fare; (4) $66.81 taxi fares; and (5) $94.53 meals.[36] The supporting documentation attached to defendants' Bill of Costs includes a Southwest Airlines receipt showing that Bero traveled from Los Angeles to Houston via common carrier on February 19, 2011, for a round-trip fare of $933.90 with a return date of February 23, 2011. The documentation also shows that a fare change of $491.20 was paid on February 22, 2011, the day that Bero returned to Los Angeles.

Baisden does not object to Bero's airport shuttle or taxi fares, but objects that defendants have failed to show that this fare was the most economical rate reasonably available. The court is persuaded that Bero's airfare was reasonable because Bero's travel could not have been booked before the trial dates were finalized only days before the trial started. However, since the costs that defendants seek for Bero's overnight stays exceed the maximum per diem rates for lodging and for meals and incidental expenses allowed for Houston, Texas, during February of 2011, the court concludes that the defendants are not entitled to recover the entire amount sought for Bero's subsistence but, instead, may only recover $109.00 per night for lodging and $53.25 for meals and incidental expenses for her first and last days of travel (February 19 and 22), and $71 for meals and incidental expenses for February 20 and 21. *See United Teacher Associates,* 414 F.3d at 575 & n. 12 ("28 U.S.C. § 1821(d)(2) does not, however, permit the award of 'actual costs,' but limits such awards to the per diem rate."). Thus, the court concludes that the total taxable cost for Bero's appearance at trial is $2,175.41 consisting of (1) $1,425.10 for airfare, (2) $575.50 for subsistence,[37] (3)

---

**35.** This figure is calculated as follows: February 23—$109.00 for lodging and $53.25 for meals and incidental expenses; February 24—$109.00 for lodging and $71.00 for meals and incidental expenses; and February 25—$53.20 for meals and incidental expenses. *See* 41 C.F.R. § 301–11.6 (2009) (referring to the web site maintained by the General Services Administration at *http://www.gsa.gov/perdiem* showing FY 2011 Per Diem Rates for Houston, Texas, as $109.00 per night for lodging (see *http://www.gsa.gov/portal/content/101518*), and $71.00 for meals and incidental expenses, and $53.25 for meals and incidental expenses on the first and last day of travel (see *http://www.gsa.gov/portal/content/100120*). Website last viewed on June 8, 2011.

**36.** Itemized Schedule in Support of Bill of Costs attached to Bill of Costs, Docket Entry No. 291, p. 5. *See id.* at n. 5 ("In Defendants' Bill of Costs, they correctly stated the total amount of Bero's costs for subsistence, but they inadvertently stated that she required five days of subsistence. Bero traveled to Houston for trial on February 19, 2011 and returned to Los Angeles on February 22, 2011. Defendants therefore seek only four days of subsistence for Bero.").

**37.** This figure is calculated as follows: February 19—$109.00 for lodging and $53.25 for meals and incidental expenses; February 20 and 21—$109.00 for lodging and $71.00 for meals and incidental expenses; and February 22—$53.25 for meals and incidental expenses. *See* 41 C.F.R. § 301–11.6 (2009) (referring to the web site maintained by the General Services Administration at *http://www.gsa.gov/perdiem* showing FY 2011 Per Diem Rates for Houston, Texas, as $109.00 per night for lodging (see *http://www.gsa.gov/portal/content/101518*), and $71.00 for meals and incidental expenses, and $53.25 for meals and incidental expenses on the first and last day of travel (see *http://www.gsa.gov/portal/content/100120*). Website last viewed on June 8, 2011.

$108.00 for shuttle fare, and (4) $66.81 for taxi fares. Accordingly, Baisden's objection to the cost sought for Bero's appearance at trial is sustained in part and overruled in part.

### 4. *Conclusions*

For the reasons explained above, the court concludes that defendants are not entitled to the $6,871.04 that they seek for witnesses but, instead, are entitled to $6,242.11 for witnesses. This amount consists of (1) $820.40 for Weisheit, (2) $950.50 for Arnold's deposition appearance, (3) $2,295.80 for Arnold's trial appearance, and (4) $2,175.41 for Bero. Accordingly, Baisden's objections to defendants' request for witness fees are sustained in part and overruled in part.

### D. Exemplification and Copy Costs

Defendants seek $15,523.49 for "[f]ees for exemplification and costs of making copies of any materials where the copies are necessarily obtained for use in the case." [38] Defendants explain that

> [t]his amount includes fees for: (1) scanning, imaging, and electronically processing paper documents for document production or for use at trial; (2) obtaining certified copies of the copyright registrations of the allegedly infringed works and deposit copies of the works at issue in this case; (3) obtaining demonstratives for use at trial; and (4) copying each of the pleadings filed with the Court and the discovery requests and responses exchanged in this case.[39]

Baisden argues that this amount should be denied because, among other reasons, "Defendants provide absolutely no explanation as to why this inflated copying bill is necessary." [40] Citing *Fogleman*, 920 F.2d at 286, Baisden argues that

> [i]t is apparent from a cursory review of Defendants' documents that they also include several disallowed items. For instance, Invoice 1308 shows that Defendants' current request seeks reimbursement for demonstrative aids used in this case. This Court, and the Fifth Circuit, has held that such costs are not recoverable.[41]

Baisden argues that "Defendants seek recovery of $2,607.00 for 'certified deposit copies' and 'certified copyright registrations' related to Plaintiff's novels and/or I'm Ready Production's specious copyrights. These items were not necessarily obtained for use in the litigation and were clearly unnecessary." [42] Baisden argues that defendants are trying "to obtain payment of an hourly billing rate of $165–$170 ... for time allegedly spent scanning documents ... [that] are not permitted under Section 1920." [43]

### 1. *Itemization*

■ Baisden argues that defendants have failed to properly itemize their exemplification and copying costs because they have failed to "explain the contents of literally thousands of copies that were made in a case that was decided on relatively few exhibits." [44] Defendants respond that the charges for document reproduction were reasonable and necessary.[45] Moreover,

---

**38.** *See* Bill of Costs, Docket Entry No. 291.

**39.** Declaration of David H. Harper, Exhibit A to Bill of Costs, Docket Entry No. 291, pp. 2–3 ¶ 5.

**40.** Plaintiff's Objections to Defendants' Request for Bill of Costs, Docket Entry No. 292, p. 7.

**41.** *Id.* at 8.

**42.** *Id.*

**43.** *Id.* at 9.

**44.** *Id.* at 7.

**45.** Defendants' Reply in Support of Bill of Costs, Docket Entry No. 293, pp. 6–7.

the record indicates that defendants' counsel made the appropriate declaration under penalty of perjury that the costs were correct and "necessarily incurred in this action."[46] The fact that defendants may not have precisely itemized their copying costs does not undermine the court's ability to order Baisden to pay these costs. *United Teacher Associates,* 414 F.3d at 574–75. Nor is the court persuaded that the sheer number of copies for which defendants seek costs demonstrates that those costs are excessive.

### 2. *Demonstratives for Trial*

■ Defendants seek $779.40 for demonstratives for trial.[47] Baisden argues that defendants' request for costs of demonstratives for trial are not recoverable as costs. The Fifth Circuit has held that "absent pretrial approval of the exhibits ... a party may not later request taxation of the product costs to its opponent." *Louisiana Power & Light Co. v. Kellstrom,* 50 F.3d 319, 335 (5th Cir.), *cert. denied,* 516 U.S. 862, 116 S.Ct. 173, 133 L.Ed.2d 113 (1995) (per curiam) (citing *Johns–Manville Corp. v. Cement Asbestos Products Co.,* 428 F.2d 1381 (5th Cir. 1970)). In *Johns–Manville,* 428 F.2d at 1385, the Fifth Circuit held that, absent a statutory provision for the taxation of charts and exhibits as costs, costs for demonstrative exhibits were recoverable only if a prevailing party had received the court's pretrial authorization to produce them. This holding from *Johns–Manville* has since been recognized as abrogated by the Supreme Court's holding in *Crawford Fitting,* 107 S.Ct. at 2499, that courts can

tax costs only with statutory or contractual authorization. *See W & O, Inc.,* 213 F.3d at 623. Because defendants did not obtain pretrial approval for their demonstratives, and because defendants have not cited any authority for the court's ability to award such costs to prevailing parties, the court concludes that defendants are not entitled to tax the production costs of their demonstrative exhibits to Baisden. *See Coats,* 5 F.3d at 891 (denying costs sought for demonstratives used at trial).

### 3. *Deposit and Registration Copies*

■ Defendants seek $2,607.00 for deposit and registration copies of copyrighted materials. This amount consists of: (1) $402.00 for certified deposit copies of stage plays; (2) $2,100.00 for certified deposit copies of novels; and (3) $105.00 for certified copies of copyright registrations.[48] Baisden argues that defendants incurred these costs needlessly because (1) the validity and existence of the copyrights for his novels should never have been in dispute, (2) defendants had access to his novels during discovery, (3) he produced copies of his certified copyright registrations as trial exhibits, and (4) the existence and substance of copyrights for the stage plays was never an issue. Defendants respond that these costs were necessarily incurred because Baisden failed to produce deposit copies of his works or his copyright registrations in discovery. Because this case is a copyright case, and because Baisden does not dispute that he failed to produce deposit copies of his works during discovery, defendants necessarily incurred costs

---

**46.** Bill of Costs, Docket Entry No. 291, p. 1. *See also* Declaration of David H. Harper, Exhibit A to Bill of Costs, Docket Entry No. 291, p. 2 ¶ 5 ("Defendants incurred $15,523.49 in exemplification and duplication costs of materials necessarily obtained for use in this case.").

**47.** *See* Itemized Schedule in Support of Bill of Costs attached to Bill of Costs, Docket Entry No. 291, p. 8 (Invoice No. 1308).

**48.** *See* Itemized Schedule in Support of Bill of Costs attached to Bill of Costs, Docket Entry No. 291, p. 8 (Invoice Nos. 20457463 and 20527897).

for obtaining them. But because defendants do not dispute Baisden's assertion that the validity of copyrights for the stage plays was never at issue, defendants are not entitled to recover the $402.00 spent for certified deposit copies of IRP's stage plays.

### 4. *Document Scanning and Imaging*

 Baisden argues that "costs related to electronic scanning and imaging of documents should not be taxed."[49] Defendants contend that they are entitled to recover these costs but have not cited any authority that recognizes expenditures for these services as costs that may be taxed under § 1920. *See Crawford Fitting*, 107 S.Ct. at 2499 (holding that courts can tax costs only with statutory or contractual authorization). Because defendants have failed to cite any statutory or contractual authority in support of their request for the cost of document scanning and imaging, defendants are not entitled to recover these costs. Since defendants have not challenged Baisden's calculation of the amounts attributable to this category of costs, defendants' request for exemplification and copying costs in the amount of $15,523.49 should be reduced by the amount of $7,311.84.[50]

### 5. *Conclusions*

For the reasons explained above, the court concludes that the $15,523.49 that defendants seek for fees for exemplification and costs of making copies should be reduced by the following amounts: (1) $779.40 sought for demonstratives for trial; (2) $402.00 sought for certified deposit copies of stage plays; and (3) $7,311.84 sought for scanning and imaging. Accordingly, the amount that defendants are entitled to

receive as taxable costs for exemplification and copying is $7,030.25.

### III. *Conclusions and Order*

For the reasons explained above, Plaintiff's Objections to Defendants' Request for Bill of Costs (Docket Entry No. 292) are **SUSTAINED IN PART and OVERRULED IN PART.**

Defendants are entitled to recover costs in the following amounts: (1) fees for printed or electronically recorded transcripts necessarily obtained for use in the case—$41,776.00; (2) fees for witnesses—$6,242.11; and (3) fees for exemplification and copies necessarily obtained for use in the case—$7,030.25. Together these three categories of costs total $55,048.36. Baisden is **ORDERED** to pay this amount to defendants.

---

**49.** Plaintiff's Objections to Defendants' Request for Bill of Costs, Docket Entry No. 292, p. 9.

**50.** *Id.* at 7.